**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **A.G.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE LAB SCHOOL OF WASHINGTON,**<br><br>**Defendant.** | * * * * * * * * * * * * | **Civil Case No.: SAG-26-01330** |

* * * * * * * * * *

# MEMORANDUM OPINION

Plaintiff A.G. ("Plaintiff") asserts negligence claims against Defendant The Lab School of Washington ("The Lab School" or "Defendant") pursuant to the Maryland Child Victims Act of 2023, Md. Code. Ann., Cts. & Jud. Proc. § 5-117, based on alleged sexual abuse by a Lab School teacher. ECF 4. The Lab School removed the case to this Court on April 3, 2026, on the basis of diversity jurisdiction. ECF 1. The Lab School has filed a Motion to Dismiss the Complaint. ECF 9. Plaintiff opposes the motion, ECF 13, and The Lab School filed a reply, ECF 14. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, the motion will be granted in part and denied in part.

## I. BACKGROUND

The following facts are derived from Plaintiff's amended complaint, ECF 4, and are assumed to be true for the purpose of the motion to dismiss.

The Lab School of Washington is a private, non-profit school for children in first through twelfth grade with learning disabilities. *Id.* at 2. It operates a campus in Baltimore, Maryland. *Id.* Plaintiff was a student at The Lab School in Baltimore for six years beginning from the age of eleven. *Id.* ¶ 19. During that time, Rebecca Mink was Plaintiff's teacher. *Id.*

When Plaintiff was approximately sixteen years old, Mink molested and sexually assaulted Plaintiff four or five times over the span of one to two days. *Id.* ¶ 20. Mink forced Plaintiff to drink alcohol, and once he was intoxicated, "would then force [Plaintiff] to penetrate her with his penis" and "perform[ed] oral sex on him." *Id.* ¶ 21. After the abuse, Plaintiff alleges that Mink "influenced staff to expel" him, and he was barred from participating in the school's graduation ceremony. *Id.* ¶ 22.

Plaintiff disclosed his abuse to at least two other teachers at The Lab School. *Id.* Further, Plaintiff alleges that Defendant "knew or should have known that sexual abuse was occurring on its campus" because "[s]exual abuse of school children was a known issue that was happening in many places across the country, Maryland, and specifically within the Baltimore region." *Id.* ¶ 26. Yet, despite this knowledge, Defendant "failed to take action," which "created a culture of silence and impunity that allowed the abuse to continue." *Id.* ¶ 26.

As a result of the abuse, Plaintiff suffered, and will continue to suffer, "great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace and humiliation." *Id.* at 13.

## I. LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to

relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

## II. DISCUSSION

The Complaint asserts four claims: negligence (Count I); negligent hiring, training, education, supervision, and retention (Count II); negligent failure to enact and enforce policies that would prevent sexual abuse (Count III); and premises liability (Count IV). ECF 4. The Lab School seeks to dismiss all four claims. ECF 9. Each is discussed below.

### a. Count I: Negligence

To plead a cognizable negligence claim, Plaintiff must allege "the existence of a duty owed by a defendant to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Perry v. Asphalt & Concrete Servs., Inc.*, 447 Md. 31, 51 (2016) (quoting *Cramer v. Housing Opportunities Comm'n of Montgomery Cnty.*, 304 Md. 705, 712 (1985)).

Here, Plaintiff alleges The Lab School owed him a duty to protect students from foreseeable harm, including sexual abuse by teachers. ECF 4 ¶ 25. As for breach, Plaintiff alleges The Lab School failed to: "Properly screen or vet school personnel for risk of abuse; Supervise school personnel with direct access to children; Implement and enforce policies to detect, prevent and report abuse; Investigate reports of abuse of warning signs; and Train staff and students on abuse prevention and reporting." *Id.* ¶¶ 28–33.

The Lab School does not contest that it owed a duty to Plaintiff as an enrolled student. ECF 9-1 at 9 n.6. Rather, The Lab School argues that Plaintiff fails to establish "how an act or omission by the School breached a cognizable duty to [Plaintiff], or how the School's alleged breach proximately caused his injuries." *Id.* at 3. In addition, The Lab School argues that Count I is duplicative of Counts II (Negligent Hiring, Training, Supervision, and Retention) and III (Negligent Failure to Enact and Enforce Policies That Would Prevent Sexual Abuse) and should be dismissed for reasons of judicial economy. *Id.* at 17.

To the extent that Count I states a claim, it is identical to the claims in Counts II (Negligent Hiring, Training, Supervision, and Retention) and III (Negligent Failure to Enact and Enforce Policies to Prevent Abuse). Counts are duplicative when they "stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 417 (D. Md. 2022) (quoting *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010)). A district court "has discretion to dismiss duplicative claims where they allege the same facts and the same injury." *Id.* (citing *C & K NuCo, LLC v. Expedited Freightways, LLC*, No. 13 C 4006, 2014 WL 4913446, at *12 (N.D. Ill. Sept. 30, 2014)); *Wultz*, 755 F. Supp. 2d at 81 ("As a matter of judicial economy, courts should dismiss a claim if it is duplicative of another claim in the same suit.").

While Count I asserts a general claim for negligence, and Counts II and III assert specific negligence-based torts, the claims are based on the same allegations, decided under the same legal standards, and have the same relief available. Plaintiff identifies the same acts and omissions of The Lab School as evidence of breach for all three counts. *See* ECF 4 ¶¶ 28–33, 40–44, 52–59. The injuries that Plaintiff alleges are the same for each of the three counts: "first, the abuse itself, which was caused by the School's pre-existing failures to screen, supervise and train its personnel; and second, the compounding harm that resulted from the Lab School's

failure to act after [Plaintiff] disclosed the abuse." ECF 13 at 7. Finally, the legal standards applied to all three negligence claims are the same. "[U]nder Maryland law, the elements of a claim for negligent selection, training, supervision, or retention are functionally the same as in an ordinary claim for negligence." *Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d at 418 (citing *Jones v. State*, 425 Md. 1, 18 (2012)). The parties identify no additional or different elements needed for Count III. *See generally* ECF 4; ECF 9-1; ECF 13.

Accordingly, the counts are duplicative. *See Cmty. Coll. Of Baltimore Cnty.*, 595 F. Supp. 3d at 418 (dismissing a general negligence claim that was based on the same factual allegations and theory of liability as a negligent hiring, training, supervision, and retention on duplicity grounds). Absent unique facts or legal theories in Count I that do not arise elsewhere in the Complaint, the issues Plaintiff seeks to raise are better addressed under the more-specific Counts II and III.

**b. Count II: Negligent Hiring, Training, Education, Supervision, and Retention**

To plead a negligent hiring, retention, supervision, or training claim, Plaintiff must allege sufficient information to support an inference of "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] ... as the approximate cause of the plaintiff's injuries." *Minnick v. Southwest Airline Co.*, No. 22 CV 03084, 2024 WL 4252988, at *2 (D. Md. Sep. 20, 2024) (quoting *Karn v. PTS of America, LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022)).

Schools have a special duty "to exercise reasonable care to protect a pupil from harm." *J.D. v. Baltimore City Bd. of Sch. Comm'rs*, No. 25 CV 1125, 2025 WL 2653149, at *8 (D. Md. Sept. 16, 2025) (quoting *Lunsford v. Bd. of Ed. of Prince George's Cnty.*, 280 Md. 665, 676 (1977)). To establish breach of this duty, Plaintiff must allege an employer "had or should have

had knowledge of [the employee's] conduct or general character which would have caused a prudent employer in these circumstances to have taken action." *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996); *see also Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 481 Md. 274, 315 (2022) ("In many instances involving negligence claims against teachers and administrators, the plaintiffs' claim will rise or fall on the issue of foreseeability."); *Gomez v. Heights Sch.*, No. 22 CV 03117, 2023 WL 7191117, at *4 (D. Md. Nov. 1, 2023) ("Bare allegations that the [school] knew or should have known about [a teacher's] propensity for harm is not sufficient.").

Plaintiff alleges The Lab School breached its duty of care by failing to: "Conduct adequate background checks and screenings; Train staff to identify, report and prevent abuse; Monitor school employees and/or staff's behavior and investigate complaints; and Discipline or remove school employees and/or staff who posed a danger to children." ECF 4 ¶ 41–44. Specifically, Plaintiff alleges that Defendant knew or should have known of the risk their employees posed to students because Plaintiff "disclosed his abuse to at least two other teachers at The Lab School;" "Sexual abuse of school children was a known issue that was happening in many places across the country, Maryland, and specifically within the Baltimore region. The public, including the Defendant, knew of the rise in sex abuse of children through constant news stories. Information about abuse prevention was made available to the public and detailed strategies were provided to schools;" and there were "warning signs, reports and internal knowledge." *Id.* ¶¶ 22, 16, 40.

The Lab School argues that Plaintiff failed to establish breach of duty and proximate cause. ECF 9-1 at 8–15. First, The Lab School contends the Complaint lacks facts regarding The Lab School's actual or constructive knowledge of the risk posed by one of its employees. The Lab School is correct that Plaintiff's allegations that The Lab School was or should have been on notice because of general news stories about sexual abuse of school and unspecified

"warning signs, reports and internal knowledge" are insufficient to demonstrate actual or constructive notice. However, Plaintiff's allegation that he disclosed his abuse to at least two other teachers at the school presents a closer question.

In *C.M. v. Adams & Assocs., Inc.*, the court declined to dismiss a negligence claim where the plaintiff alleged there were "complaints and allegations both from youth residents and independent evaluators which informed [Defendant or its agents] that numerous staff had, and were continuing to perpetrate sexual abuse upon the youth in their care." No. 25 CV 2684, 2025 WL 3484044, at *6 (D. Md. Dec. 4, 2025). The court explained, "[t]hough Plaintiff does not specify those complaints ... with much clarity, a liberal construction of those allegations taken together entitles him to such an inference at this pre-discovery stage." *Id.* at *6; *see also J.D.*, 2025 WL 2653149, at *8 (declining to dismiss a negligence claim where the plaintiff alleged that the school had been directly notified of the perpetrator's propensity for harm and took no action in response, even when the complaint failed to plead the underlying facts with precision). On the other hand, courts dismiss complaints that fail to allege any facts that would put the defendant on notice of employee misconduct. *See, e.g.*, *Gomez*, 2023 WL 7191117, at *3–4; *Talley v. Anne Arundel Cnty.*, No. CV 21-347, 2021 WL 4244759, at *12 (D. Md. Sept. 17, 2021).

The Court finds that Plaintiff satisfies his burden at the pleading stage by alleging that he disclosed his abuse to at least two other teachers at The Lab School and the school took no action in response. Construing the complaint liberally and drawing all inferences in Plaintiff's favor, the disclosure constitutes actual knowledge by The Lab School. Based on this factual allegation, the Court could plausibly infer that the subsequent harm to Plaintiff after the disclosure was foreseeable to The Lab School because the school had actual notice of Mink's actions and her capacity to harm Plaintiff.

Second, The Lab School argues that Plaintiff fails to demonstrate that The Lab School's acts or omissions were the proximate cause of his injury. To be a proximate cause of an injury, "the negligence must be 1) a cause in fact, and 2) a legally cognizable cause." *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 156–57 (1994) (quoting *Atlantic Mut. Ins. Co. v. Kenney*, 323 Md. 116, 127 (1991)). Plaintiff alleges no facts that would have made Mink's misconduct foreseeable prior to Plaintiff's sexual abuse; however, Plaintiff alleges additional harms suffered after the abuse, namely, that he was subsequently expelled because of Mink's "influence[]" and "not allowed to participate in the graduation ceremony." ECF 4 ¶ 22. Drawing all inferences in Plaintiff's favor, The Lab School was on notice of the abuse at the time of his subsequent injuries because of Plaintiff's disclosure to other teachers. Therefore, the Complaint properly alleges that this continuing harm was proximately caused by The Lab School's negligence in retaining and supervising its employees, at least at the motion to dismiss stage, and the Motion to Dismiss is denied with respect to Count II.

**c. Count III: Negligent Failure to Enact and Enforce Policies That Would Prevent Sexual Abuse**

In Count III, Plaintiff asserts a claim for negligent failure to enact and enforce policies that would prevent sexual abuse. ECF 4 ¶¶ 49–62.

Plaintiff alleges that The Lab School owed a duty to "creat[e] and enforc[e] policies and practices that ensured the safety of the children in its care" and breached this duty by failing to: "Establish or enforce clear reporting procedures for students; Monitor and discipline school personnel, employees and/or agents who displayed grooming behavior; Investigate reports promptly and thoroughly; Give proper weight to student credibility and repeated complaints; Supervise staff about whom complaints had already been made; Conduct random, unscheduled safety rounds or monitoring procedures; and Implement practical deterrents like video review, electronic surveillance or limiting private access to students." ECF 4 ¶¶ 50, 53–59.

To the extent this cause of action rests on The Lab School's negligent failure to supervise, educate, and train its employees, it is duplicative of the negligent hiring, training, education, supervision, and retention claim in Count II. *See O.M. v. Calvary Chapel Int'l Worship Ctr.*, No. CV 25-2618, 2025 WL 3280293, at *3 (D. Md. Nov. 25, 2025) (dismissing a claim for negligent failure to enact and enforce policies that would prevent sexual abuse as duplicative of a negligent hiring, training, education, supervision, and retention claim).

Aside from the duplicity, this count fails for its lack of specific factual assertions to establish the elements required for a negligence claim. Plaintiff only alleges that "Defendant allowed a culture of misconduct to persist," "gave school employees and/or staff unsupervised access to children," and "Staff who displayed warning signs or were the subject of complaints were allowed to remain in contact with students." ECF 4 ¶ 51. These conclusory statements identify no policies or practices, or any link between a lack of policies and Plaintiff's harm (which are not already covered by Count II) to support this claim. Such "naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Therefore, Plaintiff has not stated a plausible claim for negligent failure to enact and enforce policies that would prevent sexual abuse.

**d. Count IV: Premises Liability**

Finally, Plaintiff alleges a premises liability claim. ECF 4 ¶¶ 63–69. "An action in premises liability is based on common law principles of negligence and derives from an establishment's lack of supervision, care, or control of the premises." *O.M.*, 2025 WL 3280293, at *3 (quoting *Fuqua v. New Life Evangelical Baptist Church*, No. 376, 2021 WL 6068858, at *3 (Md. Ct. Spec. App. Dec. 22, 2021)). "If the defendant did not own, possess, or control the land where the injury occurred, there can be no duty to the plaintiff, regardless of the plaintiff's

status as an entrant." *Id.* The duty owned by a property-owner is determined by the injured person's legal status at the time of the harm. *Macias v. Summit Mgmt., Inc.*, 243 Md. App. 294, 316 (2019). The highest duty is owed to invitees, and the owner has the duty to "use reasonable and ordinary care to keep the premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for the invitee's own safety will not discover." *Id.* at 317 (quoting *Deboy v. City of Crisfield*, 167 Md. App. 548, 555 (2006)).

The Lab School concedes that "students at a private school may be considered legal invitees when on the premises." ECF 9-1 at 15. However, Plaintiff's claim fails for two reasons. First, the Complaint does not specify where the alleged sexual abuse and harms occurred, but broadly states that "Plaintiff was injured while in Defendant's care and on its premises." ECF 4 ¶¶ 20–21, 68. This statement is a mere threadbare recital of the element of the cause of action, unsupported by any factual allegations, which does not suffice under the motion to dismiss standard. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Second, even assuming that the alleged abuse had occurred on The Lab School's premises, Plaintiff has not pleaded the existence of a "dangerous condition" within the meaning of premises liability. Maryland courts have limited the scope of the tort of premises liability specifically to an injury resulting from a *physical defect* on the property. *See Rhaney v. Univ. of Md. Eastern Shore*, 388 Md. 585, 599 (2005) (rejecting the argument that another student's "propensity to batter his roommate" could be "characterized properly as a dangerous or defective condition" in a premises liability claim against a university); *see also Buettner-Hartsoe v. Baltimore Lutheran High Sch. Ass'n*, No. CV 20-3132, 2021 WL 2580385, at *18 (D. Md. June 23, 2021) (dismissing a premise liability claim for lack of a "dangerous

condition" where the plaintiff alleged the defendant-school's policies and failure to respond to complaints created a "toxic sexual atmosphere" within the school).[1]

Accordingly, Plaintiff's allegations that The Lab School "failed to properly staff and monitor its campus where minor children were present" which "created unsafe conditions that enabled abuse to occur," ECF 4 ¶ 67, are not reflective of a defective physical condition of the premises. Plaintiff's other surviving negligence claim is a more appropriate vehicle for his allegations. Therefore, Plaintiff has failed to allege premises liability against The Lab School.

## III. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, ECF 9, will be granted as to Counts I (Negligence), III (Negligent Failure to Enact and Enforce Policies That Would Prevent Sexual Abuse), and IV (Premises Liability). Those counts are dismissed without prejudice. The Motion is denied as to Count II (Negligent Hiring, Training, Education, Supervision, and Retention). A separate Order follows.

Dated: August 18, 2026

/s/
Stephanie A. Gallagher
United States District Judge

[1] In *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645 (D. Md. 2021), the court denied a motion to dismiss the plaintiff's premises liability claim. The plaintiffs, parents of student who was shot to death by another student while at school, alleged that the school "failed to take reasonable precautionary measures such as screening for weapons on their property despite a threat of violence a month earlier and a day earlier and despite specific notice about [the shooter's] threatening behavior, and the failure resulted in a student's assault and death." *Id.* at 670. While this is not the typical "physical defect" found in premises liability claims, the court in *Willey* noted that it is "distinct from the types of allegations that Judge Bennett found insufficient to state a premises liability claim in the *Buettner-Hartsoe* case" because the allegations were "not focused on the occurrence of sexual harassment on the school property but on the lack of security policies, measures, and procedures on the school property despite knowledge of prior threats of violence, prior acts of violence, and the foreseeability of an act of violence." *Id.* at 669–70. Plaintiff's allegations here do not resemble those in *Willey* because Plaintiff has not asserted a connection between the property itself and Mink's alleged conduct.